IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | |
|---|---|
| DONALD W. THOMAS JR., | ) CASE NO. 5:19-CV-02548 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) MEMORANDUM OPINION AND ORDER |
| Defendant. | ) |

**Introduction**

Before me[1] is an action under 42 U.S.C. §405(g) by Donald W. Thomas, Jr. seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied Thomas's 2016 for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and

---

[1] The parties consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Solomon Oliver, Jr. ECF No. 19.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF No. 6.

1

procedural[6] orders, the parties have filed their briefs[7] and supporting charts.[8] They have met and conferred to see if the issues may be clarified or reduced,[9] and have participated in a telephonic oral argument.[10]

For the reasons stated, the decision of the Commissioner will be affirmed.

## Facts

**A.   ALJ's Decision**

Thomas was born in 1969 and completed the 12th grade with no additional training.[11] He lives with his family, cares for a pet and handles his own finances.[12] He formerly worked as a home health aide and a warehouse worker[13] but testified that he had to stop working because of a variety of conditions, including those that led to him having double hip replacement.[14]

The ALJ found that Thomas has the following severe impairments:

Obesity, status post hip arthroplasty, degenerative disc disease of the lumbar and cervical spine, peripheral neuropathy, and obstructive sleep apnea.[15]

---

[6] ECF No. 11.
[7] ECF Nos. 12 (Thomas brief); 15 (Commissioner brief); 17 (Thomas reply).
[8] ECF Nos. 12, Attachment 1 (Thomas); 15, Attachment 1 (Commissioner); 21 (Thomas addendum).
[9] ECF No. 18.
[10] ECF No. 22.
[11] Tr. at 37.
[12] *Id.* at 18.
[13] *Id.* at 23.
[14] *Id.* at 20.
[15] *Id.* at 17.

Upon reviewing the clinical and opinion evidence, the ALJ found that Thomas has the following residual functional capacity (RFC):

> Sedentary work … except he requires the use of a cane to ambulate. He can occasionally balance, stoop, kneel, crouch and climb ramps and stairs. He can never crawl or climb ladders, ropes or scaffolds. The claimant can never work at unprotected heights, he can never work around moving mechanical parts, and can never operate a motor vehicle.

After concluding that Thomas is unable to return to his past relevant work,[16] the ALJ heard testimony from a vocational expert (VE) as to what jobs, if any, are available in significant number in the national economy that Thomas could perform.[17] The VE identified the jobs of food and beverage order clerk, charge account clerk, and document preparer.[18]

Accordingly, the ALJ found Thomas not disabled.[19]

**B.    Thomas's Brief**

Thomas raises three related issues:

1.    The ALJ erred by not finding that Thomas met Listing 1.03.

2.    The ALJ erred in weighing the opinion of Dr. Paul Hartzfield, M.D. a treating physician.[20]

3.    The ALJ erred in affording more weight to the opinions of two state agency reviewing physicians whose opinions were outdated.[21]

---

[16] *Id*. at 23.
[17] *Id*. at 24.
[18] *Id*.
[19] *Id*. at 25.
[20] ECF No. 12 at 7-11.
[21] *Id*. at 11-12.

3

Essentially, Thomas argues first that records from his hip replacements in 2015 and 2016, as well as going forward, show that the surgeries themselves still left him requiring the use of a cane for ambulation.[22] Further, the surgeries created a discrepancy in leg length that made ambulation more painful and difficult, which is borne out in subsequent exam notes.[23] Listing 1.03 is met when effective ambulation does not occur within 12 months of reconstructive surgery.[24] He asserts that he ALJ erred in finding that Thomas could ambulate effectively after 12 months because: (1) the ALJ misread the definition of ineffective ambulation as requiring two canes or a walker and (2) Thomas's ability to handle his finances has no bearing on his ability to ambulate.[25]

Next, as to the contention that the ALJ erred in assessing Dr. Hartzfield's opinion, Thomas notes that Dr. Hartzfield is a board-certified neurosurgeon who had been treating Thomas since April, 2017 and who performed C6-C7 cervical decompression and fusion on Thomas just a few months before the hearing and so is a treating source under the then-applicable regulations.[26] Dr. Hatzfield's July 2018 opinion detailed the clinical evidence of Thomas's cervical radiculopathy, nerve root compression, neuro-anatomic distribution of pain, limitation of motion of the spine, and muscle weakness in the triceps.[27] Dr. Hartzfield

---

[22] Tr. at 369-70, 375-77, 378-80, 479-80, 483-84.
[23] Id. at 477, 488-91, 508, 504-06, 690-91.
[24] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.03.
[25] ECF No. 12 at 6.
[26] *Id.* at 8.
[27] *Id*. at 685.

4

opined that Thomas would be off-task fifteen percent of the time, would need to lay down 1-2 times per 8 hour day and would need to use an ambulatory device.[28]

The ALJ gave less than controlling weight to this opinion, citing that it: (1) "gave no explanation of why [Thomas] would be off-task; (2)" failed to expand on the evidence indicating [Thomas] had root compression;" and (3) did not explain any findings that [Thomas] had to lay down during the workday."[29]

Thomas argues here that the reasons given by the ALJ ignore the fact that Thomas's cervical condition that Dr. Hartzfield treated is the "reason" he would need to lay down and, more importantly, ignores that fact the Dr. Hrtzfield's own operative report noted a "decompression" was required at C6-C7.[30]" A decompression of the nerve root is only required when the nerve root is compressed."[31]

Further, as to the final point concerning the discrepancies in weight given to Dr. Hartzfield as opposed to the state agency reviewers, Thomas points out that while Dr. Hartzfield was given "little weight" for not providing enough detail on the opinion form (although, as Thomas notes, that detail exists in other parts of Dr. Hartzfield's evidentiary record), the ALJ gave "some" weight – *i.e*., a greater weight - to the functional opinions of the two State agency reviewing physicians, even though those reviewing sources never had

---

[28] *Id*. at 686.
[29] *Id*. at 23.
[30] *Id*. at 541.
[31] ECF No. 12 at 10.

5

the benefit of the records from Dr. Hartzfield, as well as 2017 MRI showing significant stenosis.

**C.     Commissioner's Brief**

The Commissioner initially argues that the ALJ did not err in finding that Listing 1.03 was not met. The Commissioner notes that while Thomas had some gait issues after surgery and continues to use a single cane, the Listing implies an "extreme limitation" of the ability to walk that "very seriously" impairs the individual's ability to initiate, sustain or complete tasks.[32] The fact that Thomas may have discrepancy in leg length, slow gait and require the use of one cane does not keep him from grocery shopping, attending social events, or performing household tasks.[33]

In addition, no medical source testified that he met the Listing.[34] Thus, the Commissioner argues, the ALJ correctly found that he did not meet Listing 1.03.

Further, the Commissioner asserts that the ALJ properly discounted the weight given to Dr. Hartzfield's opinion.[35] Here, the Commissioner contends that although Dr. Hartzfield did state that his treatment of Thomas was based on Thomas's nerve root compression, Dr. Hartzfied did not "provide any explanation of how" that treatment or condition supports the opinion that Thomas will be off-task fifteen percent of the day.[36]

---

[32] ECF No. 15 at 5 (quoting regulation).
[33] *Id*.
[34] Id. at 6 (citing record).
[35] *Id*. at 8-14.
[36] *Id*. at 10.

6

Moreover, the Commissioner observes that Dr. Hartzfield's records show that after the April 2018 cervical decompression and fusion surgery Dr. Hartzfield never performed a full post-surgical physical examination, but rather "only made notations about [Thomas's] gait and … that he used a cane …."[37] Those observations alone, the Commissioner states, are an insufficient basis for forming the opinion as to functional limitations.[38]

Finally, the Commissioner maintains that although the state agency physicians did not have access to evidence related to Thomas's surgery, the ALJ did consider that evidence in weighing the opinion evidence.[39] Moreover, the Commissioner asserts that the ALJ was judicious in examining the opinion evidence, in that he sided with Dr. Hartzfield's opinion over that of the state agency physicians as to Thomas's need for a cane and also imposed more exertional restrictions than did the state agency physicians.[40]

**Analysis**

I review this matter under the well-known substantial evidence standard, which standard need not be restated here. Further, because Thomas's application was filed before March 27, 2017, the issue related to the ALJ's handling of the opinion of Dr. Hartzfield is considered under the treating source rubric in effect at the time.[41]

**A.     Listing 1.03**

---

[37] *Id.*at 11.
[38] *Id.* at 11-12.
[39] *Id.* at 13.
[40] *Id.* at 14.
[41] See, *White v. Comm'r*, 2021 WL 858662 (N.D. Ohio March 8, 2021).

7

Thomas, as noted, contends that the ALJ erred by failing to find that he met the requirement of Listing 1.03.[42] Essentially, the current dispute centers upon whether Thomas has shown that he meets the portion of the listing dealing with "ineffective ambulation."[43] There, ineffective ambulation is defined as "extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain and complete activities" and "insufficient lower extremity functioning … to permit independent ambulation without the use of a hand-held assistive device(s) that limits the limits the functioning of both upper extremities."[44] The regulations explain that to "ambulate effectively," individuals must be capable of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and "have the ability to travel without companion assistance to and from a place of employment or school."[45] Examples of ineffective ambulation include: the inability to walk without the use of a walker, two crutches or two canes; inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping or banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.[46]

---

[42] ECF No. 17 at 2, fn. 1.
[43] 20 C.F.R. Pt. 404, Subpt P, App.1, § 1.00B2b.
[44] *Id*.
[45] *Id*.
[46] *Id*.

8

The 2019 decision of *Collins v. Commissioner*[47] is helpful here. In particular, *Collins* explicitly noted that because the claimant in that case "only required the use of a single cane, and thus both of his upper extremities were not limited by the use of a hand-held assistive device," he "did not satisfy Listing 1.03."[48] Moreover, because to meet a Listing all the relevant criteria must be met,[49] it is irrelevant that Thomas meets other aspects of the Listing (*i.e.*, bilateral hip surgery, inconsistent leg length, difficulty in sustaining activities)[50] because the record is clear that he does not require the use of an ambulatory assistive device that involves the use of both upper extremities.

Accordingly, this aspect of the Commissioner's decision is affirmed.

**B.    Dr. Hartzfield's Opinion**

Although the ALJ here indirectly refers to Dr. Hartzfield as having "treated the claimant"[51] and begins his analysis of Dr. Hartzfield's opinion by stating that he "do[es] not afford controlling weight" to that opinion,[52] the ALJ does not directly acknowledge Dr.

---

[47] 2019 WL 3421696 (E.D. Mich. June 30, 2019).
[48] *Id.* at *5 (citing *Cousart v. Astrue*, 2012 WL 1865486, at *7 (N.D. Ohio May 2, 2012), R&R adopted, 2012 WL 1866594 (N.D. Ohio May 22, 2012) (Claimant's use of a single quad cane that did not limit both upper extremities did not meet Listing 1.03); *Conley v. Calvin*, 2016 WL 867117, at *6 (E.D. Ky. Mar. 2, 2016) (Claimant did not meet Listing 1.03 because, *inter* alia, he did not require a two-hand held assistive device for ambulation): *Marquez v. Comm'r,* 2019 WL 2251564, at *6 (E.D. Mich. May 1, 2019), R&R adopted, 2019 WL 2247836 (E.D. Mich. May 24, 2019) (Because the claimant can ambulate without the use of an assistive device that limits the functioning of both upper extremities, he does not meet Listing 1.02 or Listing 1.03).
[49] *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).
[50] ECF No. 17 at 2.
[51] Tr. at 23.
[52] *Id*.

9

Hartzfield as a treating source nor does he engage on the face of the opinion in any of the two-step analysis of such opinions set out in *Gayheart*.[53]

That said, in addition to the issue of how the ALJ weighed and treated Dr. Hartzfield's opinion, that issue is also bound up with the fact that the ALJ gave greater weight " –some" rather than "little" – to the functional opinions of two state agency reviewing physicians who gave opinions up to two years prior to Dr. Hartzfield performing surgery and giving his opinion.[54] I will address each issue separately.

First, as regards the matter of the disparate weight given to opinions from treating as opposed to merely reviewing sources, the Sixth Circuit in *Miller v. Commissioner*[55] teaches that under certain circumstances an ALJ may assign more weight to the opinion of a state agency reviewing source than to that of an examining source.[56] But it then went further to say that such circumstances include where the non-examining source opinion "is based on a review of the complete case record."[57] Where the non-examining source did not review the entire record, "we require at least some indication that the ALJ at least considered these facts before giving greater weight to the opinion of the non-examining source."[58]

---

[53] 710 F.3d 365 (6th Cir. 2013).
[54] Tr. at 81-84 (Dr. Hall opinion Jan. 2017); 67-70 (Dr. Amiri opinion October 2016); 647, 685-86 (Dr. Hartzfield surgery April 2018 and July 2018 opinion).
[55] 811 F.3d 825 (6th Cir. 2016).
[56] *Id*. at 834.
[57] *Id*.
[58] *Id*.

10

Here, the ALJ appears to again indirectly acknowledge Thomas's subsequent surgery, by noting the existence of unspecified "updated evidence" that caused him to include the requirement for a cane in the RFC that was not part of the opinions of the state agency reviewing sources.[59] That reference, oblique as it may be, does appear to be enough to support the granting of greater weight to the opinion of a non-examining source.

Nonetheless, that does not resolve the question of whether the ALJ provided good reasons for the weight given to the opinion of Dr. Hartzfield. As Thomas points out, the ALJ's reason for assigning only little weight to Dr. Hartzfield's opinion is not grounded in a finding that this opinion was not supported by or was inconsistent with the evidence.[60] Rather, the ALJ claimed – three times - that Dr. Hartzfield (1) offered "no explanation" for, (2) "failed to explain, or (3) "did not explain" his opinion.[61]

Dr. Hartzfield gave his opinion as responses to a two-page questionnaire.[62] Most of the responses were checking off "yes" or "no" with a few responses constituting several words.[63] As Magistrate Judge Ruiz noted in the 2018 case of *Matthews v. Berryhill*,[64] courts have increasingly found that a functional opinion provided in so-called "check box" form, "unaccompanied by any explanation" of the limitations described, is "weak evidence at

---

[59] Tr. at 22.
[60] ECF No. 17 at 3.
[61] Tr. at 23.
[62] *Id*. at 685-86.
[63] *Id*.
[64] 2018 WL 3352987 (N.D. Ohio June 19, 2018), R&R adopted, 2018 WL 3348869 (N.D. Ohio July 9, 2018).

11

best" and meets the "patently deficient" standard for downgrading the opinion of a treating source.[65] In *Matthews,* Magistrate Judge Ruiz found that the functional opinion of a treating source given, similar to here, in a two-page check box format, was "unexplained" and therefore "patently deficient."[66] Moreover, Magistrate Judge Ruiz further found that even if the ALJ did not sufficiently describe his reasons for assigning little weight to the check-box opinion, "any such shortcoming was harmless error" because the treating source opinion itself was patently deficient.[67]

Accordingly, for the above reasons, this aspect of the Commissioner's decision is also without error.

## Conclusion

Therefore, for the reasons stated, the decision of the Commissioner denying the application of Donald W. Thomas, Jr. for disability insurance benefits is affirmed.

IT IS SO ORDERED.

Dated: March 22, 2021                    s/William H. Baughman Jr.
                                         United States Magistrate Judge

---

[65] *Id.* at *10 (citing *Hernandez v. Comm'r*, 644 Fed. Appx. 468, 475 (6th Cir. 2016) (citation omitted)).
[66] *Id.*
[67] *Id.*